UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| DENISE VAN HISE d/b/a CARPET & TILE BY THE MILE, individually and as the representative of a class of similarly-situated persons,<br><br>                      Plaintiff,<br><br>    v.<br><br>FLOORING TECHNOLOGIES INC. d/b/a QFLOORS,<br><br>                      Defendant. | )<br>)<br>)<br>)<br>)<br>)<br>)  Civil Action No.<br>)<br>)  **CLASS ACTION**<br>)<br>)<br>) |

## CLASS ACTION COMPLAINT

Plaintiff, DENIS VAN HISE d/b/a CARPET & TILE BY HE MILE ("Plaintiff"), brings this action on behalf of herself and all others similarly situated, through her attorneys, and except as to those allegations pertaining to Plaintiff or her attorneys, which allegations are based upon personal knowledge, alleges the following upon information and belief against Defendant, FLOORING TECHNOLOGIES INC. d/b/a QFLOORS ("Defendant"):

### PRELIMINARY STATEMENT

1.  This case challenges Defendant's practice of sending unsolicited advertisements via facsimile.

2.  The federal Telephone Consumer Protection Act of 1991, as amended by the Junk Fax Prevention Act of 2005 ("JFPA"), 47 USC § 227 (hereafter "TCPA" or the "Act"), and the regulations promulgated under the Act, prohibit a person or entity from faxing or having an agent fax advertisements without the recipient's prior express invitation or permission. The TCPA provides a private right of action and provides statutory damages of $500 per violation. Upon information and belief, Defendant has sent facsimile transmissions of unsolicited advertisements to Plaintiff and the Class in violation of the TCPA, including, but not limited to, the facsimile

transmission of an unsolicited advertisement on or about June 25, 2015 ("the Fax"), a true and correct copy of which is attached hereto as Exhibit A, and made a part hereof.  The Fax promotes the commercial availability or quality of Defendant's property, goods or services, namely, Defendant's "flooring industry's most user-friendly software, wherein  the Fax invites recipients to "FREE up your time and your resources, and help your business become more profitable and efficient," states (i) "Your only surprise will be how much time and money QFloors can save you," (ii) "Give us a call and let's talk more about how QFloors will help FREE up your time and you resources, and help your business become more profitable and efficient," and (iii) Or Schedule a – (you guessed it) FREE online demo." (Exhibit A).  Plaintiff alleges on information and belief that Defendant has sent, and continues to send, unsolicited advertisements via facsimile transmission in violation of the TCPA, including but not limited to those advertisements sent to Plaintiff.

3. Unsolicited faxes damage their recipients. A junk fax recipient loses the use of its fax machine, paper, and ink toner. An unsolicited fax wastes the recipient's valuable time that would have been spent on something else. A junk fax intrudes into the recipient's seclusion and violates the recipient's right to privacy. Unsolicited faxes occupy fax lines, prevent fax machines from receiving authorized faxes, prevent their use for authorized outgoing faxes, cause undue wear and tear on the recipients' fax machines, and require additional labor to attempt to discern the source and purpose of the unsolicited message.

4. On behalf of herself and all others similarly situated, Plaintiff brings this case as a class action asserting claims against Defendant under the TCPA. Plaintiff seeks to certify a class including faxes sent to Plaintiff and other advertisements sent without proper opt-out language or without prior express invitation or permission, whether sent to Plaintiff or not.

5. Plaintiff is informed and believes, and upon such information and belief avers, that this action is based upon a common nucleus of operative facts because the facsimile transmissions at issue were and are being done in the same or similar manner. This action is based on the same legal theory, namely liability under the TCPA. This action seeks relief expressly authorized by the TCPA: (i) injunctive relief enjoining Defendant, their employees, agents, representatives, contractors, affiliates, and all persons and entities acting in concert with them, from sending unsolicited advertisements in violation of the TCPA; and (ii) an award of statutory damages in the minimum amount of $500 for each violation of the TCPA, and to have such damages trebled, as provided by § 227(b)(3) of the Act in the event willfulness in violating the TCPA is shown.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

7. This Court has personal jurisdiction over Defendant because Defendant transacts business within this judicial district, have made contacts within this judicial district, and/or has committed tortious acts within this judicial district.

## PARTIES

8. Plaintiff, DENISE VAN HISE, is a Connecticut resident that does business as CARPET & TILE BY THE MILE, in Milford, Connecticut.

9. On information and belief, Defendant, FLOORING TECHNOLOGIES INC. is a Utah corporation with the registered d/b/a of QFLOORS.

## FACTS

10. On or about June 25, 2019, Defendant sent an unsolicited facsimile to Plaintiff using a telephone facsimile machine, computer, or other device. *See* Exhibit A.

121    The top of the Fax contains in over-sized capital letters the word FREE, set forth in regular type and bold face for two rows. (Exhibit A). The Fax also provides the following:

### (Is the word "FREE" getting repetitive?)

We use it a lot when talking about all of the features and services that you'll get when you purchase QFloors, the flooring industry's most user-friendly software.

### Tired of being nickel and dimed

Our competitors like to give you bids based on their stripped down model while selling you on all the bells & whistles of the "loaded" luxury model. At QFloors, you won't be charged extra add-on fees for every little feature, service and eye blink.

### It's All Included with QFloors Software.

All New and Current* QFloors Customers receive these features & services **FREE**:
- Unlimited training on the software for as many people as you wish
- Unlimited Technical Support
- B2B Connectivity/Features
- Mobile app—QFloors Mobile for smart phones, iPads, tablets, ect.
- Software Updates (typically 2-3 updates per year).

*"Current" refers to QFloors customers who are new or up to date on their yearly maintenance plan. For more information, visit with a QFloors sales re*p.

### Straight-forward Pricing . . . Free Features and Services . . .

Your only surprise will be how much time and money QFloors can save you. Give us a call and lets talk more about how QFloors will help **FREE** up your time and your resources, and help your business become more profitable and efficient. Or Schedule a – (you guessed it) **FREE** online demo.

(Exhibit A) (emphasis in original).

12. At the bottom of the Fax is the trademarked name "QFLOORS SOFTWARE," in oversized print and below that, the Fax states "RAISE PROFITS LOWER STRESS." (Exhibit

4

A).   Finally, the Fax at the bottom contains a phone number (801-563-0140), website (www.qfloors.com), and an email address (sales @qfloors.com.)  (Exhibit A).

3   Defendant's facsimile attached as Exhibit A does not contain an opt-out notice meeting the requirements of 47 C.F.R. § 227(b)(1)(C) and 47 C.F.R. § 64.1200(a)(4). (Exhibit A). In fact, the Fax contains no opt out notice at all. (Exhibit A).

14.   The Fax advertises the commercial and/or quality availability of Defendant's property, goods, and services, namely, QFloors flooring industry's user-friendly software, and was sent without prior express invitation or permission.  Therefore, the Fax is an advertisement under the TCPA and the regulations implementing the TCPA.

15.   On information and belief, Defendant receives some or all of the revenues from, and profits and benefits from, the sale of the its flooring industry's software advertised on Exhibit A, which is part of its marketing operations and work.

16.   Plaintiff did not give "prior express invitation or permission" to Defendant to send the faxes.

17.   On information and belief, Defendant faxed the same and other unsolicited facsimiles without opt-out language to Plaintiff and at least 40 other recipients, or sent the same and other advertisements by fax without first receiving the recipients' express invitation or permission, and without having an established business relationship (EBR) as defined by the TCPA and its regulations. In addition, even if Defendant had an EBR with Plaintiff and the alleged class, the non-compliant opt out notice (there isn't one) precludes Defendant from perfecting the affirmative defense of EBR.

18.     There is no reasonable means for Plaintiff (or any other class member) to avoid receiving unauthorized faxes. Fax machines are left on and ready to receive the urgent communications their owners desire to receive.

## CLASS ACTION ALLEGATIONS

19.     In accordance with Fed. R. Civ. P. 23(b)(3), Plaintiff brings this class action pursuant to the TCPA, on behalf of the following class of persons:

> All persons who (1) on or after four years prior to the filing of this action, (2) were sent telephone facsimile messages of material advertising the commercial availability or quality of any property, goods, or services by or on behalf of Defendant, (3) from whom Defendant did not obtain "prior express invitation or permission" to send fax advertisements, (4) with whom Defendant did not have an established business relationship, or (5) where the fax advertisements did not include an opt-out notice compliant with 47 C.F.R. § 64.1200(a)(4)(iii).

Excluded from the Class are Defendant, its employees, agents and members of the Judiciary. Plaintiff seeks to certify a class that includes but is not limited to the fax advertisements sent to Plaintiff. Plaintiff reserves the right to amend the class definition upon completion of class certification discovery.

20.     Class Size (Fed. R. Civ. P. 23(a)(1)): Plaintiff is informed and believes, and upon such information and belief avers, that the number of persons and entities of the Plaintiff Class is numerous and joinder of all members is impracticable. Plaintiff is informed and believes, and upon such information and belief avers, that the number of class members is at least forty.

21.     Commonality (Fed. R. Civ. P. 23 (a) (2)): Common questions of law and fact apply to the claims of all class members. Common material questions of fact and law include, but are not limited to, the following:

  (a)  Whether Defendant is the "sender" of unsolicited fax advertisements;

  (b)  Whether Defendant's faxes sent to other persons, not Plaintiff, constitute advertisements;

  (c)  Whether Defendant's faxes advertised the commercial availability or quality of Defendant' property, goods, or services;

  (d)  The manner and method Defendant used to compile or obtain the list of fax numbers to which they sent Exhibit A, other unsolicited faxed advertisements or other advertisements without the required opt-out language;

  (e)  Whether Defendant faxed advertisements without first obtaining the recipient's prior express invitation or permission;

  (f)  Whether Defendant sent the unsolicited faxed advertisements knowingly;

  (g)  Whether Defendant violated the provisions of 47 U.S.C. § 227 and the regulations promulgated thereunder;

  (h)  Whether the faxes contain an "opt-out notice" that complies with the requirements of § (b)(1)(C)(iii) of the Act, and the regulations promulgated thereunder, and the effect of the failure to comply with such requirements;

  (i)  Whether Defendant should be enjoined from faxing advertisements in the future;

  (j)  Whether Plaintiff and the other members of the class are entitled to statutory damages; and

  (k)  Whether the Court should award treble damages.

22. <u>Typicality (Fed. R. Civ. P. 23 (a) (3)):</u> Plaintiff's claims are typical of the claims of all class members. Plaintiff received the same or similar faxe(s) as the faxes sent by or on

behalf of Defendant advertising the property, goods or services of Defendant during the Class Period. Plaintiff is making the same claims and seeking the same relief for itself and all class members based upon the same federal statute. Defendant has acted in the same or in a similar manner with respect to Plaintiff and all the class members by sending Plaintiff and each member of the class the same or similar fax or faxes which did not contain the proper opt-out language or were sent without prior express invitation or permission.

23.     <u>Fair and Adequate Representation (Fed. R. Civ. P. 23 (a) (4))</u>:  Plaintiff will fairly and adequately represent and protect the interests of the class. It is interested in this matter, has no conflicts, and has retained experienced class counsel to represent the class.

24.     <u>Predominance and Superiority (Fed. R. Civ. P. 23 (b) (3))</u>:  Common questions of law and fact predominate over any questions affecting only individual members, and a class action is superior to other methods for the fair and efficient adjudication of the controversy because:

   (a)     Proof of the claims of Plaintiff will also prove the claims of the class without the need for separate or individualized proceedings;

   (b)     Evidence regarding defenses or any exceptions to liability that Defendant may assert and attempt to prove will come from Defendant's records and will not require individualized or separate inquiries or proceedings;

   (c)     Defendant has acted and are continuing to act pursuant to common policies or practices in the same or similar manner with respect to all class members;

   (d)     The amount likely to be recovered by individual class members does not support individual litigation. A class action will permit a large number of relatively small

claims involving virtually identical facts and legal issues to be resolved efficiently in one proceeding based upon common proofs; and

(e) This case is inherently manageable as a class action in that:

(i) Defendant identified persons to receive the fax transmissions and it is believed that Defendant's and/or Defendant's agents' computers and business records will enable Plaintiff to readily identify class members and establish liability and damages;

(ii) Liability and damages can be established for Plaintiff and the class with the same common proofs;

(iii) Statutory damages are provided for in the statute and are the same for all class members and can be calculated in the same or a similar manner;

(iv) A class action will result in an orderly and expeditious administration of claims and it will foster economies of time, effort, and expense;

(v) A class action will contribute to uniformity of decisions concerning Defendant's practices; and

(vi) As a practical matter, the claims of the class are likely to go unaddressed absent class certification.

**Claim for Relief for Violation of the TCPA, 47 U.S.C. § 227** *et seq.*

25. The TCPA makes it unlawful for any person to "use any telephone facsimile machine, computer or other device to send, to a telephone facsimile machine, an unsolicited advertisement . . . ." 47 U.S.C. § 227(b)(1)(C).

26. The TCPA defines "unsolicited advertisement" as "any material advertising the commercial availability or quality of any property, goods, or services which is transmitted to any

person without that person's prior express invitation or permission, in writing or otherwise." 47 U.S.C. § 227 (a) (5).

27. **Opt-Out Notice Requirements.** The TCPA strengthened the prohibitions against the sending of unsolicited advertisements by requiring, in § (b)(1)(C)(iii) of the Act, that senders of faxed advertisements place a clear and conspicuous notice on the first page of the transmission that contains the following among other things (hereinafter collectively the "Opt-Out Notice Requirements"):

(1) A statement that the recipient is legally entitled to opt-out of receiving future faxed advertisements – knowing that he or she has the legal right to request an opt-out gives impetus for recipients to make such a request, if desired;

(2) A statement that the sender must honor a recipient's opt-out request within 30 days and the sender's failure to do so is unlawful – thereby encouraging recipients to opt-out, if they did not want future faxes, by advising them that their opt-out requests will have legal "teeth";

(3) A statement advising the recipient that he or she may opt-out with respect to all of his or her facsimile telephone numbers and not just the ones that receive a faxed advertisement from the sender – thereby instructing a recipient on how to make a valid opt-out request for all of his or her fax machines;

(4) The opt-out language must be conspicuous.

The requirement of (1) above is incorporated from § (b)(D)(ii) of the Act. The requirement of (2) above is incorporated from § (b)(D)(ii) of the Act and the rules and regulations of the Federal Communications Commission (the "FCC") in ¶ 31 of its 2006 Report and Order, 21 F.C.C.R. 3787, 2006 WL 901720, which rules and regulations took effect on

August 1, 2006). The requirements of (3) above are contained in § (b)(2)(E) of the Act and incorporated into the Opt-Out Notice Requirements via § (b)(2)(D)(ii). Compliance with the Opt-Out Notice Requirements is neither difficult nor costly. The Opt-Out Notice Requirements are important consumer protections bestowed by Congress upon the owners of the telephone lines and fax machines giving them the right, and means, to stop unwanted faxed advertisements.

28.     **2006 FCC Report and Order.** The TCPA, in § (b)(2) of the Act, directed the FCC to implement regulations regarding the TCPA, including the TCPA's Opt-Out Notice Requirements, and the FCC did so in its 2006 Report and Order, which in addition provides among other things:

A.     The definition of, and the requirements for, an established business relationship for purposes of the first of the three prongs of an exemption to liability under § (b)(1)(C)(i) of the Act and provides that the lack of an "established business relationship" precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 8-12 and 17-20);

B.     The required means by which a recipient's facsimile telephone number must be obtained for purposes of the second of the three prongs of the exemption under § (b)(1)(C)(ii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See* 2006 Report and Order ¶¶ 13-16);

C.     The things that must be done in order to comply with the Opt-Out Notice Requirements for the purposes of the third of the three prongs of the exemption under § (b)(1)(C)(iii) of the Act and provides that the failure to comply with these requirements precludes the ability to invoke the exemption contained in § (b)(1)(C) of the Act (*See*

2006 Report and Order ¶¶ 24-34).

29. **The Fax**. Defendant sent the advertisement on or about June 25, 2015, via facsimile transmission from telephone facsimile machines, computers, or other devices to the telephone lines and facsimile machines of Plaintiff and members of the Plaintiff Class. The Fax constituted an advertisement under the Act and the regulations implementing the Act. Defendant failed to comply with the Opt-Out Requirements in connection with the Fax. The Fax was transmitted to persons or entities without their prior express invitation or permission and/or Defendant is precluded from sustaining the established business relationship safe harbor with Plaintiff and other members of the class, because of the failure to comply with the Opt-Out Notice Requirements. By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder by sending the Fax via facsimile transmission to Plaintiff and members of the Class. Plaintiff seeks to certify a class which includes this Fax and all others sent during the four years prior to the filing of this case through the present.

30. **Defendant's Other Violations.** Plaintiff is informed and believes, and upon such information and belief avers, that during the period preceding four years of the filing of this Complaint and repeatedly thereafter, Defendant has sent via facsimile transmission from telephone facsimile machines, computers, or other devices to telephone facsimile machines of members of Plaintiff Class other faxes that constitute advertisements under the TCPA that were transmitted to persons or entities without their prior express invitation or permission (and/or that Defendant is precluded from sustaining the established business relationship safe harbor with Plaintiff because of the failure to comply with the Opt-Out Notice Requirements in connection with such transmissions). By virtue thereof, Defendant violated the TCPA and the regulations promulgated thereunder. Plaintiff is informed and believes, and upon such information and belief

avers, that Defendant may be continuing to send unsolicited advertisements via facsimile transmission in violation of the TCPA and the regulations promulgated thereunder, and absent intervention by this Court, will do so in the future.

31. The TCPA provides a private right of action to bring this action on behalf of Plaintiff and Plaintiff Class to redress Defendant's violations of the Act, and provides for statutory damages. 47 U.S.C. § 227(b)(3). The Act also provides that injunctive relief is appropriate. *Id.*

32. The TCPA is a strict liability statute, so Defendant is liable to Plaintiff and the other class members even if their actions were only negligent.

33. Defendant knew or should have known that (a) Plaintiff and the other class members had not given prior express invitation or permission for Defendant or anybody else to fax advertisements about the availability and/or quality of Defendant's products, goods or services; (b) Plaintiff and the other class members did not have an established business relationship with Defendant; (c) Defendant transmitted or caused a third party to transmit the advertisements; (d) the Faxes did not contain the required Opt-Out Notice; and (e) Defendant's transmission of advertisements that did not contain the required opt-out notice or were sent without prior express invitation or permission was unlawful.

34. Defendant's actions caused injury to Plaintiff and the other class members. Receiving Defendant's junk faxes caused Plaintiff and the other recipients to lose paper and toner consumed in the printing of Defendant's faxes. Moreover, Defendant's faxes occupied Plaintiff's and each class member's telephone lines and fax machines. Defendant's faxes cost Plaintiff's and each class member's time, as Plaintiff and its employees, as well as each class member and their employees, wasted their time receiving, reviewing and routing Defendant's

unauthorized faxes. That time otherwise would have been spent on Plaintiff's and each of the class member's business or personal activities. Defendant's faxes intruded into Plaintiff's and other class members' seclusion and violated their right to privacy, including their interests in being left alone. Finally, the injury and property damage sustained by Plaintiff and the other class members from the sending of Defendant's advertisements occurred outside of Defendant's premises.

WHEREFORE, Plaintiff, DENISE VAN HISE d/b/a CARPET & TILE BY THE MILE, individually and on behalf of all others similarly situated, demands judgment in her favor and against Defendant, FLOORING TECHNOLOGIES INC. d/b/a QFLOORS, jointly and severally, as follows:

A.  That the Court adjudge and decree that the present case may be properly maintained as a class action, appoint Plaintiff as the representative of the class, and appoint Plaintiff's counsel as counsel for the class;

B.  That the Court award actual monetary loss from such violations or the sum of five hundred dollars ($500.00) for each violation, whichever is greater, and that the Court award treble damages of $1,500.00 if the violations are deemed "willful or knowing";

C.  That Court enjoin Defendant from additional violations; and

D.  That the Court award pre-judgment interest, costs, and such further relief as the Court may deem just and proper.

Respectfully submitted,

DENISE VAN HISE d/b/a CARPET & TILE BY THE MILE, individually and as the representative of a class of similarly-situated persons,

s/ Ryan M. Kelly

Ryan M. Kelly
**ANDERSON + WANCA**
3701 Algonquin Road, Suite 500
Rolling Meadows, IL 60008
Telephone: 847-368-1500
rkelly@andersonwanca.com

15